UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MELISSA LIN SILVA,

          Plaintiff,

   v.

CITY OF SANTA CLARA, et al.,

         Defendants.

Case No.  23-cv-02269-SVK

**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

Re: Dkt. No. 34

     While on public property, a K-9 officer owned by Defendant City of Santa Clara (the "City") bit Plaintiff Melissa Lin Silva, injuring her in the process.  The Parties do not dispute these facts, and on these facts, Plaintiff requests that the Court grant her partial summary judgment and hold the City strictly liable for her injuries.  *See* Dkt. 34 (the "Motion").  The City opposes the Motion.  *See* Dkt. 36 (the "Opposition").  Plaintiff filed a reply.  *See* Dkt. 38.  The Parties appeared before the Court for a hearing on the Motion on March 12, 2024.  *See* Dkt. 43 ("Hr'g Tr.").  All necessary Parties—Plaintiff and named Defendants—have consented to the jurisdiction of a magistrate judge.[1]  *See* Dkts. 6, 9, 40.  After considering the Parties' briefing and relevant law, after hearing oral argument and for the reasons set forth below, the Court **GRANTS** the Motion.

## I.     BACKGROUND

     The Parties do not dispute the following facts.  On July 9, 2022, at around 4:00 p.m., Defendant Kevin McColloch, a police officer employed by the City, was engaged in training exercises with Tank, a K-9 officer owned by the City, in the Santa Clara Youth Soccer Park.  *See*

---

[1] In addition to named Defendants, Plaintiff also sued 50 Doe defendants.  *See* Dkt. 19 ¶ 8.  These Doe defendants are not "parties" for purposes of assessing whether there is complete consent to magistrate-judge jurisdiction.  *See Williams v. King*, 875 F.3d 500, 502-505 (9th Cir. 2017) (magistrate-judge jurisdiction vests only after all named parties, whether served or unserved, consent); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020) (*Williams* does not require consent of unnamed Doe defendants).

1  Motion at 1-2, 9; Dkts. 34-6 at 3, 36-2 ¶¶ 3-4, 8.  At around that time, Plaintiff, while walking her

2  dog, entered the park.  *See* Dkts. 34-1 ¶¶ 2-4, 36-2 ¶ 8.  Upon Plaintiff's entering the park,

3  Defendant McColloch yelled at her to leave.  *See* Motion at 2; Dkt. 36-2 ¶ 8.  Almost immediately

4  thereafter, the K-9 officer and Plaintiff's dog reached a close proximity and began fighting.  *See*

5  Dkts. 34-1 ¶ 5, 36-2 ¶¶ 8-9.  During the scuffle, Plaintiff, her dog, Defendant McColloch and the

6  K-9 officer ended up outside the park and on the street or sidewalk near Defendant McColloch's

7  truck.  *See* Dkts. 34-1 ¶ 6, 36-2 ¶ 9; *see also* Dkt. 34-3 (image depicting approximate location of

8  truck outside soccer park at time of incident).  The K-9 officer then bit Plaintiff in the arm, causing

9  her physical injuries.  *See* Motion at 3; Opposition at 4.  Plaintiff subsequently commenced this

10  action against the City and Defendant McColloch to recover for her injuries.  *See* Dkts. 1, 19.

## II.    LEGAL STANDARD

12  A party may move for summary judgment on any claim or defense or for partial summary

13  judgment on part of any claim or defense.  *See* Fed. R. Civ. P. 56(a).  "The court shall grant

14  summary judgment if the movant shows that there is no genuine dispute as to any material fact and

15  the movant is entitled to judgment as a matter of law."  *Id.*  Material facts are those "that might

16  affect the outcome of the suit under the governing law."  *See Anderson v. Liberty Lobby, Inc.*, 477

17  U.S. 242, 248 (1986).  And a genuine dispute of material fact exists "if the evidence is such that a

18  reasonable jury could return a verdict for the nonmoving party."  *See id.*  Thus, the "purpose of

19  summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there

20  is a genuine need for trial,'" and where "the record taken as a whole could not lead a rational trier

21  of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec.*

22  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted)).

23  The moving party

24
25  always bears the initial responsibility of informing the district court of the basis for
   its motion, and identifying those portions of "the pleadings, depositions, answers to
26  interrogatories, and admissions on file, together with the affidavits, if any," which
   it believes demonstrate the absence of a genuine issue of material fact.

27

28  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, where the moving party would bear

United States District Court
Northern District of California

2

the burden of persuasion at trial (*e.g.*, where the moving party seeks summary judgment on its own claim or defense), the moving party must establish "beyond controversy every essential element of its" claim or defense.  *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted).  If the moving party meets its burden, the burden then shifts to the non-moving party to "demonstrat[e that] the evidence, taken as a whole, could lead a rational trier of fact to find in its favor."  *See id.* (citation omitted).

Where the moving party would not bear the burden of persuasion at trial (*e.g.*, where the moving party seeks summary judgment on the non-moving party's claim or defense), the moving party

> has both the initial burden of production and the ultimate burden of persuasion . . . .
> In order to carry its burden of production, the moving party must either produce
> evidence negating an essential element of the nonmoving party's claim or defense
> or show that the nonmoving party does not have enough evidence of an essential
> element to carry its ultimate burden of persuasion at trial.  In order to carry its
> ultimate burden of persuasion on the motion, the moving party must persuade the
> court that there is no genuine issue of material fact.

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted).  If the moving party meets its burden, "the nonmoving party must produce evidence to support its claim or defense [sufficient] . . . to create a genuine issue of material fact."  *See id.* at 1103 (citations omitted).

In evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (citation omitted).  But even under this favorable standard, "the non-moving party must come forward with more than 'the mere existence of a scintilla of evidence.'"  *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (citation omitted).

///

///

///

United States District Court
Northern District of California

### III.   DISCUSSION

Plaintiff moves for partial summary judgment on one narrow issue:  Whether Section 3342 of the California Civil Code imposes strict liability on the City.  *See* Motion at 1, 9.  The Court holds that it does.

#### A.   The Court Denies The City's Evidentiary Objections As Moot

As an initial matter, the Court addresses the City's evidentiary objections.  The City objects to Plaintiff's submission of two pieces of evidence in connection with the Motion:  (1) an aerial photograph purporting to show the location of Defendant McColloch's truck at the time of the incident and (2) legislative history for the 1988 amendment to Section 3342.  *See* Dkts. 34-4, 34-8, 36-4.  With respect to the aerial photograph, the Court does not rely on that submission in this Order.  With respect to the legislative history of the 1988 amendment, the Court has independently obtained its own copy of that legislative history, which the Court *sua sponte* judicially notices and appends to this Order as Appendix A.  The Court therefore **DENIES** the City's objections as moot.

#### B.   The City Is Strictly Liable For Plaintiff's Injuries

Under Section 3342 of the California Civil Code, "[t]he owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place . . . ."  Cal. Civ. Code § 3342(a).  Subsection (a) of the statute imposes strict liability on a defendant (*see Priebe v. Nelson*, 39 Cal. 4th 1112, 1116 (2006)) where a plaintiff satisfies its four elements:  (1) the defendant owned a dog; (2) that dog bit the plaintiff; (3) at the time of the bite, the plaintiff was on public property or lawfully on private property; and (4) the plaintiff suffered an injury as a result of the bite.  Here, Plaintiff carries its burden of satisfying these elements, and the City fails to show the existence of a genuine dispute of material fact that defeats Plaintiff's showing.

**Element (1):  The City Owned The K-9 Officer.**  The City's discovery responses establish that it purchased the K-9 officer in 2018, and the City does not dispute that it owned the K-9 officer at the time of the incident.  *See* Dkt. 34-6 at 3; Hr'g Tr. at 1:19-2:10.

**Element (2):  The K-9 Officer Bit Plaintiff.**  Plaintiff and the City agree that the K-9

4

United States District Court
Northern District of California

officer bit Plaintiff.  *See* Motion at 3; Opposition at 4; Hr'g Tr. at 1:19-2:10.

**Element (3):  Plaintiff Was On Public Property When The K-9 Officer Bit Her.**

Plaintiff and the City agree that the K-9 officer bit Plaintiff outside the soccer park near Defendant McColloch's truck.  *See* Dkts. 34-1 ¶¶ 6-7, 36-2 ¶ 9.  Plaintiff also appends to the Motion a photograph showing the approximate location of the truck on the day of the incident as outside the park.  *See* Dkt 34-3.  The City does not object to Plaintiff's inclusion of this photograph in the Motion or dispute that the photograph provides an accurate approximation of the location of the truck on the day of the incident.[2]  The City also does not dispute that the bite occurred on public property.  *See* Hr'g Tr. at 1:19-2:10.

**Element (4):  Plaintiff Suffered An Injury As A Result Of The Bite.**  Plaintiff and the City agree that the K-9 officer injured Plaintiff when it bit her.  *See* Motion at 3; Opposition at 4; Hr'g Tr. at 1:19-2:10.

Thus, the four elements of subsection(a) are met, and the statute imposes strict liability on the City.

**C.      The City Is Not Immune From Liability**

In addition to imposing strict liability on the conditions discussed above under subsection (a), the statute, under subsection (b), immunizes government entities like the City from liability where the government entity "us[ed] a dog in military or police work" under certain circumstances.  *See* Cal. Civ. Code § 3342(b).  The City argues that a genuine dispute of fact exists regarding whether those circumstances were met, and thus, granting summary judgment on the question of liability is inappropriate.  Specifically, the City points to questions of fact as to whether (1) the K-9 officer "was on duty at the time of the incident," (2) "the bite occurred when the [K-9 officer] was attacked by plaintiff," (3) the K-9 officer was defending Defendant McColloch, (4) the K-9 officer or Plaintiff's dog "initiated the fight" and (5) "Plaintiff was a participant in the acts that followed [her entering the soccer park] whereby the [K-9 officer] was

---

[2] As discussed above, the City does object to Plaintiff's submission of an aerial photograph purporting to show the location of Defendant McColloch's truck at the time of the incident, but it does not object to Plaintiff's submission of this other photograph, which Plaintiff's counsel represents the City produced in discovery.  *See* Dkts. 34-3, 34-9 ¶ 4.

provoked by her trespass and the dog fight."  *See* Opposition at 6-8.

However, under subsection (c), the statute further provides that the immunity provision of subsection (b) does not apply "where the victim of the bite or bites was not a party to, nor a participant in, nor suspected to be a party to or a participant in, the act or acts that prompted the use of the dog in the military or police work" contemplated under subsection (b).  *See* Cal. Civ. Code § 3342(c) (emphasis added).  In other words, if the victim of the dog bite did not in any way cause the government entity to bring the dog "out in the field" in the first place, the statute's immunity provision does not apply.  *See also* Appendix A at Letter from Assemblyman O'Connell to Governor Deukmejian (July 5, 1988) ("The immunity from liability does not apply, however, if the victim was not a part of the conduct for which the dog was being used."); *Farnam v. State of California*, 84 Cal. App. 4th 1448, 1460 (4th Dist. Div. 3 2000) (Bedsworth, J., dissenting) ("[T]he Legislature has made clear it intends police agencies to escape liability for their dogs' bites only when the person bitten is the suspected wrongdoer.").

Here, the City explains (and Plaintiff does not dispute) that Defendant McColloch brought the K-9 officer to the soccer park to engage in training exercises.  *See* Opposition at 2-3; Hr'g Tr. at 2:11-17.  Thus, for purposes of subsections (b) and (c), Defendant McColloch engaged the K-9 officer in the "police work" of training, and the undisputed facts demonstrate that Plaintiff in no way "prompted" this police work.[3]  *See also* Hr'g Tr. at 7:17-8:15.  As a result, and as required by subsection (c), the immunity afforded under subsection (b) does not apply.

**D.    As A Matter Of Law, Plaintiff's Purported Assumption Of Risk And Comparative Negligence Do Not Absolve The City Of Liability**

The City argues that Plaintiff assumed the risk of the K-9 officer biting her and that she was comparatively negligent in causing her injuries.  *See* Opposition at 9.  As a threshold matter, it is not clear why the City raises this argument.  As far as the Court can discern from the

---

[3] The existence of a written policy obligating the City's police officers to continuously train K-9 officers bolsters the conclusion that such training constitutes "police work" under the statute.  *See* Opposition at 2 (describing written policy); Cal. Civ. Code § 3342(d) (immunity applies only where written policy exists regarding "police work" in question); *Castenada v. City of Napa, Cal.*, No. 95-cv-04094-MHP, 1996 WL 241818, at *11 (N.D. Cal. May 3, 1996) ("It is clear from the language of the statute that section 3342(b) applies to use of dogs in police work when the government agency has adopted a written policy on their use.").

United States District Court
Northern District of California

United States District Court
Northern District of California

Opposition, the City believes that Plaintiff's role in causing her injuries creates a genuine dispute of fact regarding whether she prompted the K-9 officer to attack her.  *See id.* ("As such, a question of fact exists as to whether Plaintiff's trespass and conduct was a substantial factor in provoking the [K-9 officer] and causing the unintended bite.").  But as discussed above, Plaintiff indisputably did not prompt Defendant McColloch to engage the K-9 officer in training, which constitutes the relevant "police work" for purposes of evaluating the City's defense of statutory immunity.

To the extent the City argues (and it does not do so expressly in the Opposition) that Plaintiff's assumption of risk and comparative fault serve as *per se* bars to liability, the Court rejects that conclusion—nearly 50 years ago, the California Supreme Court abrogated the complete bar to recovery imposed by a plaintiff's share in the blame for an injury stemming from a defendant's negligence (known as contributory negligence).  *See Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 828-29 (1975).  Notably, the only authority the City cites that could support this argument, *Gomes v. Byrne*, 51 Cal. 2d 418 (1959), predates *Li*.[4]

Regardless of the City's intention in broaching an argument about Plaintiff's apparent assumption of risk or comparative negligence, a brief evaluation of the two doctrines confirms that neither defeats the Court's grant of partial summary judgment on the issue of the City's strict liability.  Under California law, assumption of risk comes in two flavors:  primary and secondary.  *See Gregory v. Cott*, 59 Cal. 4th 996, 1001 (2014).  Primary assumption of risk applies where the defendant owed no duty to the plaintiff and serves as a total bar to recovery; however, the doctrine

---

[4] The City also argued during the hearing on the Motion that a dispute of fact exists concerning whether Plaintiff's actions were "part of the cause of the event or the cause of the sequence of events where" Plaintiff, Defendant McColloch and the two dogs "ended up outside" the park, which "goes to finding . . . some sort of a substantial factor . . . causing this incident."  *See* Hr'g Tr. at 8:17-11:8.  To the extent this discussion constitutes an argument that a question of fact exists regarding whether Plaintiff's conduct served as a superseding cause sufficient to defeat a finding of liability at the summary-judgment stage, the Court declines to consider that argument; neither during the hearing nor in the Opposition did the City expressly discuss a superseding-causation argument.  *See Cobarrubia v. Edwards*, No. 19-cv-07899-KAW, 2021 WL 4846948, at *2 (N.D. Cal. June 4, 2021) ("[T]he court need not consider arguments made for the first time at hearing." (citations omitted)); *Obeso v. Nat'l R.R. Passenger Corp.*, No. 23-cv-02793-SVK, 2023 WL 6278880, at *7 n.6 (N.D. Cal. Sept. 25, 2023) ("The Court trusts litigants to marshal forth their strongest arguments and evidence and will consider <u>only</u> those arguments and evidence presented.").

generally does not apply to claims brought under Section 3342.[5] *See Davis v. Gaschler*, 11 Cal. App. 4th 1392, 1397-99 (3d Dist. 1992); *see also Priebe*, 39 Cal. 4th at 1128 ("We have shown that subdivision (a) of section 3342 has been held to impose a duty of care on every dog owner to prevent his or her dog from biting persons in a public place or lawfully in a private place . . . ." (citation omitted)).  Thus, only secondary assumption of risk could apply to Plaintiff's Section 3342 claim.  Under secondary assumption of risk, "the doctrine is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties."  *See Gaschler*, 11 Cal App. 4th at 1398 (emphasis added) (citation omitted).  Therefore, the degree to which a plaintiff assumed the risk or is comparatively negligent serves only to limit their recovery and does not present a *per se* bar to recovery.  *See Shin v. Ahn*, 42 Cal. 4th 482, 498-99 (2007); *Aeros Aeronautical Sys. Corp. v. United States*, No. 15-cv-01712-PSG, 2016 WL 10516020, at *9 (C.D. Cal. June 20, 2016) ("[C]omparative fault relates to damages, not liability." (citation omitted)).

Accordingly, the City's invocation of assumption of risk and comparative negligence bears no fruit on this Motion; the Court need not determine whether Plaintiff engaged in a secondary assumption of risk or was comparatively at fault for her injury because such analysis would not implicate the City's strict liability for Plaintiff's injuries.

### E.    Whether Plaintiff Trespassed Onto The Soccer Park Is Irrelevant At This Stage Of The Proceedings

The City also argues that the Court cannot resolve the issue of its potential strict liability under Section 3342 at the summary-judgment stage because a genuine dispute of material fact exists regarding whether Plaintiff trespassed onto the soccer park before the K-9 officer bit her. *See* Opposition at 5-6.  But whether Plaintiff trespassed onto the park before the K-9 officer bit her is irrelevant—the K-9 officer bit her while she was on public property (a fact the Parties do not dispute), and Section 3342 asks for the location of a plaintiff at only the time of the bite.  *See* Cal.

United States District Court
Northern District of California

---

[5] The Court is aware of only one exception—primary assumption of risk bars recovery under Section 3342 where "the defendant is impliedly relieved of any duty of care by the plaintiff's acceptance of employment involving a known risk or danger" (*e.g.*, where the plaintiff is a veterinary assistant).  *See Nelson v. Hall*, 165 Cal. App. 3d 709, 714 (3d Dist. 1985) (citations omitted).

Civ. Code § 3342(a) ("The owner of any dog is liable for the damages suffered by any person who is bitten by the dog <u>while in a public place or lawfully in a private place</u> . . . ." (emphasis added)); *see also* California Civil Jury Instructions (BAJI) § 6.67 (instructing jury that "essential elements" of Section 3342 claim include whether "[t]he plaintiff, <u>at the time of the bite</u> was in a public place or lawfully in or on a private place" (emphasis added)); Judicial Council of California Civil Jury Instruction (CACI) 463 (instructing jury that "Essential Factual Elements" of Section 3342 claim include whether "the dog bit [the plaintiff] <u>while [the plaintiff] was in a public place or lawfully on private property</u>" (emphasis added)).

The City opposes this conclusion, arguing that "[w]here the bite occurred is irrelevant because it was precipitated by Plaintiff's trespass and negligence" and that "the totality of the incident occurred because Plaintiff trespassed onto City property that was not open to the public." Opposition at 5.  But the City cites no authority indicating that the Court should consider a plaintiff's potential trespass <u>before</u> a bite occurred where the bite subsequently occurred on public property.  For better or worse, Section 3342 does not contemplate an analysis of the location of a dog's initial "provocation."  Instead, the statute unambiguously concerns itself with the location of a plaintiff at only the time of the bite.  *See also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with 'the language of the statute.'  And where the statutory language <u>provides a clear answer</u>, it ends there as well." (emphasis added) (citations omitted)); *People v. Harrison*, 57 Cal. 4th 1211, 1221 (2013) ("When the language of a statute is clear, we need go no further." (citations omitted)).  The Court has also not found any authority supporting the City's position or any authority addressing a situation where a plaintiff "provoked" a dog while trespassing but ultimately escaped to public property before being bitten.

The Court recognizes that such strict adherence to the language of Section 3342 could foster unintended or even seemingly inequitable consequences.  For example, under the Court's interpretation, if a plaintiff broke into a defendant's home as part of a burglary, happened upon the defendant's guard dog and then escaped onto a public street before the dog bit them, the defendant would be strictly liable.  However, the seeming unfairness of this result would be tempered by the

plaintiff's comparative fault in causing their own injury, which would significantly reduce (if not completely eliminate) any damages owed by the defendant.  Thus, to the extent the City urges the Court to factor Plaintiff's purported trespass into its analysis, the Court's rejection of that argument today is without prejudice to the City raising it in a later stage of the litigation concerning damages.[6]

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion and holds the City strictly liable for Plaintiff's injuries under Section 3342 of the California Civil Code.

**SO ORDERED.**

Dated: March 22, 2024

SUSAN VAN KEULEN
United States Magistrate Judge

---

[6] The Court expresses no opinion in this Order regarding whether Plaintiff (1) trespassed or assumed the risk of injury when she entered the soccer park or (2) is comparatively at fault for her injuries.

# Appendix A

AUTHOR **O'CONNELL**

DATE RECEIVED **6-29** 1986

LAST DAY TO ACT **7-11** 1986

| | | | | | |
|---|---|---|---|---|---|
| LC | | IR | | PUC | |
| BTH | | LEGAL | | DPA | |
| EQ | | OLGA | | ED | |
| FIN | | RES | | | |
| F&A | | SCS | | | |
| H&W | | ✓ YAC | | | |

ACTION OF GOVERNOR **7-7** 1986

CAL-837-0-78298-811 Document 18 Filed 1/31/04 Page 13 of 20

JACK I. HORTON
ANN MACKEY
CHIEF DEPUTIES

JAMES L. ASHFORD
JERRY L. BASSETT
STANLEY M. LOURIMORE
JOHN T. STUDEBAKER
JIMMIE WING

DAVID D. ALVES
JOHN A. CORZINE
C. DAVID DICKERSON
ROBERT CULLEN DUFFY
ROBERT D. GRONKE
SHERWIN C. MACKENZIE, JR.
TRACY O. POWELL, II
MARGUERITE ROTH
PRINCIPAL DEPUTIES

3021 STATE CAPITOL
SACRAMENTO, CA  95814
(916) 445-3057

8011 STATE BUILDING
107 SOUTH BROADWAY
LOS ANGELES, CA  90012
(213) 620-2550

# Legislative Counsel
# of California

### BION M. GREGORY

GERALD ROSS ADAMS
MARTIN L. ANDERSON
PAUL ANTILLA
DANA S. APPLING
CHARLES C. ASBILL
RANEENE P. BELISLE
DIANE S. BOYER
AMELIA I. BUDD
EILEEN J. BUXTON
HENRY J. CONTRERAS
BEN E. DALE
JEFFREY A. DELAND
CLINTON J. DEWITT
FRANCES S. DORBIN
MAUREEN S. DUNN
LAWRENCE J. DURAN
SHARON R. FISHER
JOHN FOSSETTE
HARVEY J. FOSTER
CLAY FULLER
ALVIN D. GRESS
BALDEV S. HEIR
THOMAS R. HEUER
MICHAEL J. KERSTEN
L DOUGLAS KINNEY
S. LYNNE KLEIN
VICTOR KOZIELSKI
EVE B. KROTINGER
DIANA G. LIM
ROMULO I. LOPEZ
JAMES A. MARSALA
FRANCISCO A. MARTIN
PETER MELNICOE
ROBERT G. MILLER
JOHN A. MOGER
VERNE L. OLIVER
EUGENE L. PAINE
MICHAEL B. SALERNO
MARY SHAW
WILLIAM K. STARK
MARK FRANKLIN TERRY
JEFF THOM
MICHAEL H. UPSON
RICHARD B. WEISBERG
DANIEL A. WEITZMAN
THOMAS D. WHELAN
JANA T. WHITGROVE
DEBRA J. ZIDICH
CHRISTOPHER ZIRKLE
DEPUTIES

Sacramento, California
July 1, 1988

Honorable George Deukmejian
Governor of California
Sacramento, CA   95814

Assembly Bill No.  2973

Dear Governor Deukmejian:

Pursuant to your request, we have reviewed the above-numbered bill authored by  Assembly Member O'Connell  and, in our opinion, the title and form are sufficient and the bill, if chaptered, will be constitutional.  The digest on the printed bill as adopted correctly reflects the views of this office.

Very truly yours,

Bion M. Gregory
Legislative Counsel

By  *John T. Studebaker*

John T. Studebaker
Principal Deputy

JTS:wld

Two copies to Honorable ____ Jack O'Connell ____,
pursuant to Joint Rule 34.

SACRAMENTO OFFICE
STATE CAPITOL
P.O. BOX 942849
SACRAMENTO, CA 94249-0001
(916) 445-8292

SANTA BARBARA OFFICE
STUDIO 127, EL PASEO
SANTA BARBARA, CA 93101
(805) 966-2296

OXNARD OFFICE
300 SOUTH C ST., SUITE 4
OXNARD, CA 93030
(805) 487-9437

# Assembly
# California Legislature

### JACK O'CONNELL
ASSEMBLYMAN, THIRTY-FIFTH DISTRICT

CHAIRMAN, SUBCOMMITTEE ON EDUCATIONAL REFORM

CHAIRMAN, WAYS AND MEANS SUBCOMMITTEE #3 ON
RESOURCES, AGRICULTURE AND THE ENVIRONMENT

COMMITTEES:
EDUCATION
FINANCE AND INSURANCE
PUBLIC EMPLOYEES,
RETIREMENT AND SOCIAL
SECURITY
RULES
WAYS AND MEANS
JOINT LEGISLATIVE AUDIT
COMMITTEE
FINANCE AND INSURANCE
SUBCOMMITTEE ON WORKERS
COMPENSATION
WAYS AND MEANS SUBCOMMITTEE
ON EDUCATION
SELECT COMMITTEE ON CHILD
CARE

July 5, 1988

The Honorable George Deukmejian
Governor, State of California
State Capitol
Sacramento, California  95814

Dear Governor Deukmejian:

You have before you for signature AB 2973 which relates to liability for injuries suffered by a person who is bitten by a dog.

Specifically, AB 2973 provides that no cause of action to a governmental agency shall arise for damages suffered as the result of a dog bite by a military or police dog assisting a law enforcement or military employee in the line of duty.  The bill provides for specific instances where the dog is being used in the line of duty.  The immunity from liability does not apply, however, if the victim was not a part of the conduct for which the dog was being used.

I introduced this bill at the request of the City of Oxnard, City Attorney's Office.  They are currently facing two lawsuits brought by individuals who were bitten by a police dog while resisting arrest.  The County of San Bernardino was faced with the same problem and asked that legislation be introduced to take care of the problem.  SB 2122 by Senator Rogers was incorporated into AB 2973 at a hearing of the Senate Judiciary Committee. AB 2973 will solve the problems now faced by the City of Oxnard and the County of San Bernardino.

AB 2973 is supported by the League of California Cities, the California Peace Officers' Association and the City of Oxnard. There is no opposition.  I urge you to sign AB 2973 into law.

Sincerely,

JACK O'CONNELL

JO:dwp:tam

**ENROLLED BILL REPORT**                                                    STATE OF CALIFORNIA

| AGENCY | BILL NUMBER |
| YOUTH AND ADULT CORRECTIONAL AGENCY | AB 2973 |

| DEPARTMENT, BOARD OR COMMISSION | AUTHOR |
| CORRECTIONS | O'CONNELL |

### SUMMARY

Provides limited immunity from liability for injuries caused by dogs used in military or police work.

### IMPACT ASSESSMENT

Existing law provides for strict liability for damages resulting from dog bites. Current law makes no exception for dogs engaged in military or police work.

This bill would exempt governmental agencies from liability suits for dog bites involving military or police dogs under the following circumstances:

1.  Where the bite occurred while the dog was defending itself from annoying, harrassing, or provoking acts; or

2.  Where the dog was assisting an employee of the agency in:

    a.  in the apprehension or holding of a suspect where the employee has a reasonable suspicion of the suspect's involvement in criminal activity.

    b.  in the investigation of a crime or possible crime.

    c.  in the execution of a warrant.

    d.  in the defense of a peace officer or another person.

The exemption only applies where the person bringing suit is, or is suspected to be, a party to or participant in the acts which were the subject of the use of the police or military dogs and the agency has a written policy on the necessary and appropriate use of a dog in police or military work.

The Department of Corrections employs canine teams in searching vehicles and places for narcotics and controlled substances and apprehending escaped inmates. Written procedures relating to use of canine teams are contained in a departmental manual.

| RECOMMENDATION | | | |
| SIGN THE BILL | | | |
| DEPARTMENT HEAD | DATE | AGENCY HEAD | DATE |
| | 7/1/88 | | 7-1-88 |

CDC 853 B (1/87)

Enrolled Bill Report
AB 2973 (O'Connell)
Page 2


ARGUMENTS PRO AND CON

Pro:   This bill would limit the liability of law enforcement and
       military agencies using dogs.

Con:   None.

RECOMMENDATION

Sign the bill.

# ENROLLED BILL REPORT

| AGENCY | | BILL NUMBER |
|---|---|---|
| **RESOURCES** | | AB 2973 (6/16/88) |

| DEPARTMENT, BOARD OR COMMISSION | | AUTHOR |
|---|---|---|
| PARKS AND RECREATION | RELATED BILL: SB2122 | O'CONNELL |

**SUBJECT: LIABILITY: DOG BITES**

**BILL SUMMARY:** This bill would exempt bites from dogs employed in military or police work from any private right of action if the bite occurred while the dog was defending itself from an annoying, harassing or provoking act, or assisting an employee of the agency in any of the duties listed below if a) the victim was not a party to or participant, nor suspected to be a party to or participant in the act or acts which prompted the use of the dog in the military or police work, and b) the governmental agency using a dog in these capacities had adopted a written policy on the necessary and appropriate use of the dog in this capacity.

1) The apprehension or holding of a suspect or possible suspect;
2) The investigation of a crime or possible crime;
3) The execution of a warrant;
4) The defense of a peace officer or other person.

The bill also states that it is the intent of the Legislature to provide only limited immunity from the strict liability imposed by existing law, and that other causes of action predicated on negligence, intentional tort, and other common law theories are unaffected.

**HISTORY:** Existing law establishes that an owner is strictly liable for any damages suffered by any person bitten by a dog while in a public place or lawfully in a private place, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness (Civil Code Section 3342). Existing law also establishes that the owner of any dog which has bitten a human being must take reasonable steps to remove any danger which the dog presents to other persons, unless the bites occurred while a dog used in police or military capacity was in performance of its duty. This statute does not override established legal principles of assumption of risk and willfully invited injury.

An identical bill, SB 2122 (Rogers) was referred to interim study pending the outcome of this bill.

**SPONSORSHIP:** This bill is sponsored by the City of Oxnard, which claims that the strict liability in Section 3342 of the Civil Code exposes them to groundless lawsuits. The City as well as its police officers, are frequently sued by arrestees bitten by the City's police dogs, even if the arrest was lawful, did not involve the use of unreasonable force, or the arrestee resisted or provoked the dog. The City of Oxnard argues that defenses such as assumption of risk and willful invitation or provocation are too limited against presumption of strict liability. The City cites Civil Code Section 3342.5 and Penal Code Section 299.5 as precedents for the proposed military and police dog immunity.

Amendments made in the Assembly Committee on the Judiciary clarifying specified instances where the dog can be considered to be performing in the line of duty satisfied earlier concerns from the ACLU relating to an individual's right to action. The bill was amended again in the Senate Committee on the Judiciary to assure the right of action for innocent bystanders.

| RECOMMENDATION: | | | | |
|---|---|---|---|---|
| SIGN | | | | |
| DEPARTMENT HEAD | DATE | AGENCY HEAD | | DATE |
| Henry R. Agonia | 7/1 | | | 7/1/88 |

AB 2973    Page Two

| SUPPORT | OPPOSITION |
|---|---|
| City of Oxnard | Unknown |
| League of California Cities | |
| California Peace Officer's Assn. | |
| California State Sheriff's Assn. | |
| California Police Chiefs Assn. | |

COMMENTS: Currently no uniform standards for the training and certification of dogs and handlers exist, however, AB 1760 (Clute) which would have required the Commission on Peace Officer Standards and Training (POST) to study and recommend training standards to the Legislature by 4/19/89 failed passage in the Senate Committee on the Judiciary.

At present, DPR has seven canine peace officer units.  In the twenty years that the department has employed canine patrol units, only two bites have occurred, and none have resulted in lawsuits.  DPR maintains rigorous training and certification standards for both its dogs and their handlers.  DPR canines are purchased through Tyson Kennels, worldwide suppliers of military and police dogs, after 6 months to 3 years of intensive training.  After the dog is purchased, the handler must complete a concentrated training course with the dog before leaving the kennels, and an additional 6 months of on-site training before becoming certified.  DPR policy requires that both dog and handler be recertified on a yearly basis.

FISCAL IMPACT: This bill would reduce the risk of future legal costs associated with lawsuits initiated by individuals bitten by DPR police dogs in the line of duty.

RECOMMENDED POSITION: Sign.

REASON FOR RECOMMENDATION: This bill would directly benefit DPR by reducing the risk of liability lawsuits by individuals bitten by DPR canines in the line of duty.

| Assembly | Senate | Concurrence |
|---|---|---|
| Ayes 71 | Ayes 38 | Ayes 74 |
| Noes  0 | Noes  0 | Noes   0 |

CONTACT: Marilyn Olson
         Work: 323 4841
         Home: 457 3565

THIRD READING

| SENATE RULES COMMITTEE | Bill No. | AB 2973 |
|---|---|---|
| Office of Senate Floor Analyses 1100 J Street, Suite 120 445-6614 | Author: | O'Connell (D), et al |
| | Amended: | 6/16/88 in Senate |
| | Vote Required: | Majority |

Committee Votes:                    Senate Floor Vote:

COMMITTEE: JUDICIARY
BILL NO.: AB2973
DATE OF HEARING: 5-24-88

| SENATORS: | AYE | NO |
|---|---|---|
| Doolittle | ✓ | |
| Keene | ✓ | |
| Marks | | |
| Petris | | |
| Presley | ✓ | |
| Richardson | | |
| Roberti | ✓ | |
| Torres | ✓ | |
| Watson | ✓ | |
| Davis (VC) | ✓ | |
| Lockyer (Ch) | ✓ | |
| TOTAL: | 9 | 0 |

Assembly Floor Vote: 71-0, p. 7113, 4/28/88

**SUBJECT:** Dog bites

**SOURCE:** City of Oxnard

**DIGEST:** This bill provides that a public entity be immune from liability for injuries caused by dogs used in military or police work, as specified.

**ANALYSIS:** Under existing law, an owner of a dog is strictly liable for any injuries suffered by any person who is bitten by the dog if the person is in a public place or lawfully in a private place, "regardless of the former viciousness of the dog or the owner's knowledge of such viciousness." (Civil Code Section 3342.)

This bill would exempt from liability bites by dogs used in military or police work where the injury results while the dog was defending itself from an annoying, harassing or provoking act, or assisting an employee of the agency in any of the following:

1.  Apprehending or holding a suspect where the employee has a reasonable suspicion of the suspect's involvement in criminal activity
2.  Investigating a crime
3.  Executing a warrant
4.  Defending a peace officer or other person.

This bill would not apply in any case where the victim of the bite was not a party to, nor suspected to be a party to, the act that prompted use of the dogs.

CONTINUED

This bill specifically states that the provisions shall only apply where the agency using the dog or dogs has adopted a written policy on the proper use of dogs.

The purpose of this bill is to protect a public entity from strict civil liability for the use of police or military dogs to apprehend and arrest suspected criminals.

Similar Legislation

SB 2122 (Rogers) is in the Senate Judiciary Committee.

FISCAL EFFECT:  Appropriation:  No    Fiscal Committee:  No    Local:  No

SUPPORT:  (Verified 6/16/88)

City of Oxnard (source)
League of California Cities
California Police Officers Association

ARGUMENTS IN SUPPORT:  According to the source, the City of Oxnard, Civil Code Section 3342's standard of strict liability exposes a public entity to "groundless" lawsuits.  Specifically, the public entity and its police officers are too frequently sued by arrestees who are bitten by the public entity's police dogs.  These lawsuits occur even if the arrest was perfectly lawful, did not involve the use of unreasonable force, or, lastly, the arrestee resisted arrest or otherwise provoked the dog.

Proponents also contend that "it is inappropriate to have public agencies incur liability for dog bites that occur as a result of the apprehension and arrest of suspected offenders.  To impose liability in such cases effectively undermines police efforts and may well force peace officers to resort to other means of apprehension that pose a greater danger to both the arresting officer and a fleeing suspect."

RJG:lm 6/16/88 Senate Floor Analyses