1

2

3

4                            UNITED STATES DISTRICT COURT

5                           NORTHERN DISTRICT OF CALIFORNIA

6

7     MELISSA LIN SILVA,                        Case No.  23-cv-02269-SVK

8                    Plaintiff,

9            v.                                 **ORDER GRANTING MOTION FOR
                                                PARTIAL SUMMARY JUDGMENT**
10    CITY OF SANTA CLARA, et al.,
                                                Re: Dkt. No. 53
11                   Defendants.

12            Defendant Kevin McColloch, a police officer employed by Defendant City of Santa Clara,

13    slipped, broke his toe and fractured his foot in the moment just after his K-9 officer, of its own

14    volition, charged at Plaintiff Melissa Lin Silva.  He then failed to call off the K-9 officer before it

15    chased Plaintiff out of view and bit her.  The Parties dispute whether this failure demonstrates an

16    objective intent to restrain Plaintiff—Plaintiff argues it does (or at least creates a dispute of fact as

17    to intent), thereby forming the basis of an unconstitutional seizure and state-law violations, while

18    Defendants argue it does not, thereby compelling summary judgment in their favor.  *See* Dkts. 53

19    (the "Motion"), 56 (the "Opposition"), 57.  Having considered the Parties' briefing, relevant law

20    and the record in this action, after hearing oral argument (*see* "Hr'g Tr." at Dkt. 63) and for the

21    reasons set forth below, the Court agrees with Defendants and **GRANTS** the Motion.[1]

22    ///

23

24    _____

      [1] All necessary Parties—Plaintiff and named Defendants—have consented to the jurisdiction of a
25    magistrate judge.  *See* Dkts. 6, 9, 40.  Plaintiff also sued 50 Doe defendants.  *See* Dkt. 19 ¶ 8.
      These Doe defendants are not "parties" for purposes of assessing whether there is complete
26    consent to magistrate-judge jurisdiction.  *See Williams v. King*, 875 F.3d 500, 502-505 (9th Cir.
      2017) (magistrate-judge jurisdiction vests only after all named parties, whether served or
27    unserved, consent); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at
      *1 n.1 (N.D. Cal. Feb. 28, 2020) (*Williams* does not require consent of unnamed Doe defendants).
28

United States District Court
Northern District of California

United States District Court
Northern District of California

# I.   BACKGROUND

The Parties do not dispute the following facts.  On July 9, 2022, Defendant McColloch was performing training exercises with his K-9 officer at the Santa Clara Youth Soccer Park.  *See* Dkt. 56-3 ("McColloch Tr.") at 13:11-15, 65:10-19, 68:17-24, 73:4-74:15.  At some point during the training session, Plaintiff and her dog entered the park.  *See id.* at 87:22-88:16; Dkt. 56-2 ("Silva Tr.") at 53:9-17.  Defendant McColloch noticed Plaintiff as soon as she entered the park and immediately yelled at her to leave.  *See* McColloch Tr. at 89:19-23, 94:22-95:7; Silva Tr. at 60:21-61:8, 65:25-66:8.  Before Plaintiff could comply, the K-9 officer charged at her and her dog.  *See* McColloch Tr. at 90:2-6, 94:22-95:10; Silva Tr. at 61:4-20, 62:14-22, 63:20-64:5.  The K-9 officer had self-deployed—Defendant McColloch had not commanded it to pursue or attack Plaintiff or her dog.  *See* McColloch Tr. at 89:19-90:6, 94:22-95:10; Silva Tr. at 62:23-25, 78:3-5, 92:10-94:19.  Defendant McColloch attempted to follow his K-9 officer, but as soon as he took a step, he slipped, broke his toe and fractured his foot.  *See* McColloch Tr. at 96:4-12; Hr'g Tr. at 23:16-24:11.

Meanwhile, Plaintiff and her dog exited the park, and the K-9 officer followed.  *See* Silva Tr. at 66:5-67:19.  The K-9 officer then attacked Plaintiff's dog before moving on to Plaintiff and biting her twice; upon the second bite, Plaintiff and the K-9 officer fell to the ground.  *See id.* at 67:20-68:6, 73:1-74:14, 76:10-23; McColloch Tr. at 99:10-13.  At that point, Defendant McColloch "stumbl[ed]" over and immediately separated the K-9 officer from Plaintiff.[2]  *See* McColloch Tr. at 98:4-8, 99:18-24; Silva Tr. at 77:3-78:2, 86:8-20.  He had had several verbal

---

[2] Plaintiff testified at her deposition that when Defendant McColloch arrived to find her on the ground being bitten by the K-9 officer, he ordered her "to hold still and be quiet" before separating the K-9 officer from her.  *See* Silva Tr. at 77:3-78:2, 86:8-20.  Defendant McColloch did not provide similar testimony at his deposition, but even if the Court considers that fact as undisputed, it would not negate the immediacy with which Defendant McColloch separated the K-9 officer from Plaintiff.  Plaintiff also asserts in the Opposition that when Defendant McColloch found her on the ground being bitten, he "did not appear to be trying to get his K-9 to stop biting Plaintiff, but was instead talking on his radio."  *See* Opposition at 4 (citation omitted).  That assertion misrepresents her deposition testimony.  At her deposition, Plaintiff testified that Defendant McColloch spoke "into his chest piece" <u>before</u> the K-9 officer bit her.  *See* Silva Tr. at 68:15-69:25.  She did not, however, testify that he spoke into his chest piece when he found her on the ground being bitten by the K-9 officer.  *See also id.* at 79:1-11.

commands and a remote shock collar at his disposal that he could have used to call off the K-9 officer, but he did not use them at any time before the K-9 officer bit Plaintiff.  *See* McColloch Tr. at 29:18-34:14; Silva Tr. at 60:25-62:25, 68:23-69:7, 72:17-25, 73:13-17, 77:15-17.

Plaintiff suffered six wounds on her right arm from the attack totaling 24 centimeters in length and received 26 sutures.  *See* Dkt. 56-4 at 25.  She also reports nerve damage resulting in a loss of feeling in her arm.  *See* Silva Tr. at 101:17-103:7.

## II.     LEGAL STANDARD

A party may move for summary judgment on any claim or defense or for partial summary judgment on part of any claim or defense.  *See* Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  Material facts are those "that might affect the outcome of the suit under the governing law."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *See id.*  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial,'" and where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted)).

The moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, where the moving party would bear the burden of persuasion at trial (*e.g.*, where the moving party seeks summary judgment on its own claim or defense), the moving party must establish "beyond controversy every essential element of its" claim or defense.  *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th

United States District Court
Northern District of California

Cir. 2003) (citation omitted).  If the moving party meets its burden, the burden then shifts to the non-moving party to "demonstrat[e that] the evidence, taken as a whole, could lead a rational trier of fact to find in its favor."  *See id.* (citation omitted).

Where the moving party would not bear the burden of persuasion at trial (*e.g.*, where the moving party seeks summary judgment on the non-moving party's claim or defense), the moving party

> has both the initial burden of production and the ultimate burden of persuasion . . . . In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact.

*See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted).  If the moving party meets its burden, "the nonmoving party must produce evidence to support its claim or defense [sufficient] . . . to create a genuine issue of material fact."  *See id.* at 1103 (citations omitted).

In evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor."  *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (citation omitted).  But even under this favorable standard, "the non-moving party must come forward with more than 'the mere existence of a scintilla of evidence.'"  *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (citation omitted).

///

///

///

///

///

///

4

### III.    DISCUSSION

Defendants move for partial summary judgment on three of Plaintiff's claims:

- Use of excessive force in violation of the Fourth Amendment to the United States constitution.
- Violation of the California Bane Act.
- Civil battery.

In light of the undisputed facts, Defendants are entitled to judgment as a matter of law on all three of these claims.

### A.    The Fourth Amendment Claim Fails Because Defendant McColloch Did Not Intend To Restrain Plaintiff

The Fourth Amendment prohibits unreasonable searches and seizures by the government. *See Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *Fontana v. Haskin*, 262 F.3d 871, 879 (9th Cir. 2001). Plaintiff brings a claim concerning an allegedly unreasonable seizure only. Thus, to succeed on her claim of excessive force in violation of the Fourth Amendment, she must demonstrate both: (1) a seizure; and (2) excessive force. *See Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024); *see, e.g.*, *Seidner v. de Vries*, 39 F.4th 591, 596 (9th Cir. 2002) ("Before addressing de Vries's use of force, we must decide whether Seidner was seized, thereby implicating the Fourth Amendment." (citation omitted)). Her claim fails because the undisputed facts show that no Fourth Amendment seizure occurred.

"There are two types of Fourth Amendment seizures. '[A]n officer seizes a person when he uses force to apprehend her.' An officer can also seize a person through a 'show of authority' that 'in some way restrain[s] the liberty' of a person." *Cuevas*, 107 F.4th at 899 (citations omitted). This action concerns an alleged seizure through the use of force (*i.e.*, the K-9 officer biting Plaintiff). Force results in a Fourth Amendment seizure only when "the challenged conduct *objectively* manifests an intent to restrain." *See Torres v. Madrid*, 592 U.S. 306, 317 (2021); *see also Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989) (Fourth Amendment seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*.").

No Fourth Amendment seizure occurred here, as the undisputed facts demonstrate that

United States District Court
Northern District of California

1    Defendant McColloch did not intend to restrain Plaintiff:

2    • Defendant McColloch yelled at Plaintiff to leave as soon as she entered the park.

3    • Defendant McColloch never directed the K-9 officer to pursue or attack Plaintiff or her

4    dog.

5    • The K-9 officer self-deployed when it charged Plaintiff and her dog.

6    • Defendant McColloch attempted to follow the K-9 officer as soon as it self-deployed but

7    slipped, broke his toe and fractured his foot.

8    • When Defendant McColloch eventually stumbled over to the K-9 officer biting Plaintiff,

9    he immediately separated them.

10   Indeed, courts often find a lack of intent where K-9 officers self-deploy.  *See, e.g.*, *Andrade v. City*

11   *of Burlingame*, 847 F. Supp. 760, 762-64 (N.D. Cal. 1994) (no intent where dog acted on its own

12   in approaching and biting plaintiffs), *aff'd sub nom. Marquez v. Andrade*, No. 94-15794, 1996 WL

13   111581, at *1 (9th Cir. Mar. 13, 1996) (no intent because officer "did not order the dog to find or

14   attack the plaintiffs"); *Parker-Liles v. Garcia*, No. 15-cv-00894-MCE, 2017 WL 4340268, at *3-4

15   (E.D. Cal. Sept. 29, 2017) (no intent where officer "never called to the canine, threatened use of

16   the canine, or intentionally deployed the canine from the vehicle"); *Gangstee v. Cnty. of*

17   *Sacramento*, No. 10-cv-01004-KJM, 2012 WL 112650, at *7 (E.D. Cal. Jan. 12, 2012) (no intent

18   where officer did not issue any commands to dog or perform any other affirmative act suggesting

19   intent), *aff'd*, 567 F. App'x 500, 501 (9th Cir. 2014) ("Here, there is no evidence, nor contention,

20   that LeCouve intentionally deployed his canine in an effort to seize Gangstee.").[3]

21        Plaintiff counters that it is nevertheless reasonable to infer that Defendant McColloch

22   intended to restrain her because he:  (1) "allowed" the K-9 officer to charge towards her and attack

23   her; (2) never issued a command or used his remote shock collar to stop the K-9 officer; (3)

24

25   ────────────────

26   [3] Plaintiff addresses only one of these authorities—*Andrade*—in her Opposition.  *See* Opposition
     at 8.  She attempts to distinguish that case by noting that the officer there "called the dog off as

27   soon as he became aware that it had bitten the" plaintiffs.  *See id.* (quoting *Andrade*, 847 F. Supp.
     at 762).  But here, it is also undisputed that Defendant McColloch separated the K-9 officer from

28   Plaintiff as soon as he saw it had bitten Plaintiff.

"offers no explanation why he did not recall his K-9" officer[4]; and (4) should have known that "the only rational explanation of what's about to happen [after the K-9 officer self-deployed] is that it's about to bite Plaintiff." *See* Opposition at 7-8; Hr'g Tr. at 12:6-18. Essentially, Plaintiff argues that, taken together, these facts support a reasonable inference that Defendant McColloch, by his inaction vis-à-vis the K-9 officer, intended to restrain Plaintiff. But inferring intent from that inaction under the facts here would impermissibly depart from drawing a reasonable inference in Plaintiff's favor to underline speculating in her favor, and the Court will not do so. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009) ("While we must draw all reasonable inferences in favor of the non-moving party, we need not draw inferences that are based solely on speculation." (citations omitted)); *see, e.g., Ostly v. City & Cnty. of S.F.*, No. 23-16000, 2024 WL 3963839, at *1 (9th Cir. Aug. 28, 2024) ("Arriving at that conclusion requires a series of inferential leaps that are impermissibly speculative."). The critical fact is that immediately upon reacting to the K-9 officer self-deploying, Defendant McColloch slipped, broke his toe and fractured his foot.[5] This undisputed fact negates any inference that Defendant McColloch objectively manifested an intent to restrain Plaintiff by failing to subsequently call off the K-9

---

[4] Plaintiff proposes her own explanation, namely, that Defendant McColloch sought to detain her for her perceived trespass into the park. *See* Opposition at 7; Hr'g Tr. at 10:23-11:12. But the undisputed facts do not support such an inference as reasonable (*see* Hr'g Tr. at 10:23-11:12), and Plaintiff does not explain why Defendant McColloch would have yelled at her to leave the park as soon as he saw her enter if he sought to detain her for trespassing.

[5] Plaintiff argued at the hearing on the Motion that Defendant McColloch slipping actually supports an inference that he intended to restrain Plaintiff, "because if he slipped and fell, you would think then that would be the perfect instance to use a command to stop the dog instead of trying to physically remove it after you're injured." *See* Hr'g Tr. at 24:6-11; *see also id.* at 13:18-21. While that reasoning has some (albeit minimal) appeal in the sanitized vacuum of hindsight, the Court cannot reasonably infer that in the moment he slipped, broke his toe and fractured his foot, Defendant McColloch would have thought to issue a command to his K-9 officer. *Cf. Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving . . . .'" (citation omitted)).

1    officer before it bit Plaintiff.

2        Plaintiff also urges an inference of intent from the fact that Defendant McColloch "was

3    physically standing over Plaintiff" when he finally separated the K-9 officer from her.  *See* Hr'g

4    Tr. at 11:21-12:4.  But that fact does not lead to any reasonable inference (one way or the other)

5    about intent—when Defendant McColloch arrived to find Plaintiff being bitten, she was already

6    on the ground.  The Parties do dispute whether Plaintiff was on top of the K-9 officer or vice versa

7    after she fell to the ground (*compare* McColloch Tr. at 98:4-17, *with* Silva Tr. at 86:8-15), but they

8    agree that Defendant McColloch removed the K-9 officer from Plaintiff.  Logically, the only way

9    for Defendant McColloch to get to the K-9 officer in that situation would be to stand over both

10   Plaintiff and the K-9 officer.

11       As for legal support for her position, Plaintiff cites to three decisions for the proposition

12   that permitting the K-9 officer to bite her for an excessively long period demonstrates an intent to

13   restrain her (or at least creates a dispute of fact).  *See* Opposition at 8-10.  But those cases are

14   distinguishable because the K-9 officers there did not self-deploy.  *See Watkins v. City of Oakland,*

15   *Cal.*, 145 F.3d 1087, 1090 (9th Cir. 1998) (K-9 officer directed to search for the plaintiff); *Bates v.*

16   *Rezentes*, No. 22-cv-01097-RFL, 2024 WL 1846392, at *1-2 (N.D. Cal. Apr. 29, 2024) (same);

17   *Ellis v. Pierce Cnty. ex rel. Pierce Cnty. Sheriff's Off.*, No. 22-cv-05142-BHS, 2024 WL 519149,

18   at *1-2 (W.D. Wash. Feb. 9, 2024) (same).  Further, Defendant McColloch did not permit the K-9

19   officer to bite Plaintiff for an excessively long period, as he separated the K-9 officer from

20   Plaintiff once he saw it was biting Plaintiff.

21       In sum, no Fourth Amendment seizure occurred because the undisputed facts show that

22   Defendant McColloch did not intend to seize Plaintiff.  The Court will therefore grant summary

23   judgment to Defendants on the Fourth Amendment claim.[6]

24   ///

25

26   _____

27   [6] In light of the Court's reasoning herein, the Court does not reach Defendants' arguments
     that:  (1) Defendant McColloch did not use excessive force; and (2) the doctrine of qualified

28   immunity shields him from liability.  *See* Motion at 6-9.

United States District Court
Northern District of California

**B.      The Bane Act Claim Fails Because Defendant
McColloch Did Not Violate Plaintiff's Fourth Amendment Rights**

To succeed on a Bane Act claim, "[a] plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *See Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (3d Dist. 2015) (citations omitted); *see also* Cal. Civ. Code §§ 52.1(b)-(c).  Plaintiff predicates her Bane Act claim on Defendant McColloch's alleged Fourth Amendment violation.  *See* Dkt. 19 ¶¶ 24-28.  Her Bane Act claim therefore fails because her Fourth Amendment claim fails.  *See, e.g.*, *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1155 (9th Cir. 2022); *Price v. Peerson*, 643 F. App'x 637, 638 (9th Cir. 2016).

In the Opposition, Plaintiff argues that even if her Fourth Amendment claim fails, her Bane Act claim would still succeed as predicated on violations of Section 43 of the California Civil Code and Article I, Section 1, of the California constitution.  *See* Opposition at 16-17.  But Plaintiff does not allege that Defendants violated these specific provisions of the Civil Code or state constitution in her operative complaint.[7]  *See* Dkt. 19 ¶¶ 24-28.  She cannot, therefore, pursue a Bane Act claim based on such alleged violations.  *See Powell v. Cnty. of Orange*, No. 21-cv-00801-JVS, 2022 WL 3574282, at *3 (C.D. Cal. July 7, 2022) ("A plaintiff may not add new claims or theories of liability in an opposition brief to a motion for summary judgment." (citations omitted)); *see, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291-94 (9th Cir. 2000) (affirming grant of summary judgment to defendants where plaintiffs attempted to proceed on theory of liability at summary-judgment stage not alleged in complaint); *cf. Pickern*, 457 F.3d at 965, 968-69 (same where plaintiff raised allegations in opposition to motion for summary judgment not included in complaint, because "the complaint gave the [defendants] no notice of the specific factual allegations presented for the first time in [the plaintiff's] opposition").

---

[7] To be sure, Plaintiff does allege in her operative complaint that Defendants violated the Bane Act by violating the California constitution.  *See* Dkt. 19 ¶¶ 25, 28.  But she does not identify a specific provision of the state constitution that Defendants allegedly violated.  Such a general allegation does not permit assertion of a new legal theory at the summary-judgment stage.  *Cf. Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006).

1     The Court also asked counsel for Plaintiff at the hearing on the Motion whether Plaintiff

2  sought to base her Bane Act claim on conduct other than Defendants' alleged violations of the

3  Fourth Amendment.  *See* Hr'g Tr. at 18:21-19:22.  Counsel answered that Plaintiff premised her

4  Bane Act claim on Defendant McColloch's "intent to commit excessive force."  *See id.* at 19:23-

5  20:7.  As discussed above, however, the undisputed facts demonstrate that Defendant McColloch

6  did not intend to restrain Plaintiff.

7     In sum, Plaintiff's Bane Act claim fails because her Fourth Amendment claim fails.  The

8  Court will therefore grant summary judgment to Defendants on that claim.

9     **C.     The Civil-Battery Claim Fails Because
            Defendant McColloch Did Not Intend To Touch Plaintiff**

10  To succeed on a civil-battery claim,

11

12     a plaintiff must prove that (1) the defendant intentionally touched the plaintiff, (2)
       the defendant used unreasonable force to arrest, prevent the escape of, or overcome
13     the resistance of the plaintiff, (3) the plaintiff did not consent to the use of that
       force, (4) the plaintiff was harmed, and (5) the defendant's use of unreasonable
14     force was a substantial factor in causing the plaintiff's harm.

15

16  *See Pryor v. City of Clearlake*, 877 F. Supp. 2d 929, 952 (N.D. Cal. 2012) (citations omitted).  As

17  discussed above, the undisputed facts show that Defendant McColloch did not intend to restrain

18  Plaintiff.  Accordingly, the civil-battery claim fails, and the Court will grant summary judgment to

19  Defendants on that claim.  *See, e.g.*, *Burns v. City of Concord*, No. 14-cv-00535-LB, 2017 WL

20  5751407, at *16 (N.D. Cal. Nov. 28, 2017) (granting summary judgment to police officers on

21  civil-battery claim where only potentially relevant questions of fact concerned <u>unintentional</u> acts);

22  *Cardenas v. Am. Airlines, Inc.*, No. 17-cv-02513-GPC, 2019 WL 1469131, at *7 (S.D. Cal. Apr. 3,

23  2019) (granting summary judgment to defendant on civil-battery claim where, *inter alia*, "there is

24  no indication that [the defendant's employee] touched or intended to touch Plaintiff").

25  ///

26  ///

27  ///

28

United States District Court
Northern District of California

10

**IV.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Motion.  In light of the Court's two summary-judgment decisions (*i.e.*, this Order and the decision at Dkt. 44), the Parties shall appear for a status conference on **October 8, 2024**.  The Parties shall meet and confer prior to the status conference and submit a joint status report by **October 1, 2024**.  In the status report, the Parties shall:  (1) identify the claims that remain for trial; and (2) update the Court on the general status of settlement negotiations.

**SO ORDERED.**

Dated: September 19, 2024

_____
SUSAN VAN KEULEN
United States Magistrate Judge